## State *v.* Watson.

Taking goods, with intent to steal, from the owner, who delivers them, intending to part with the possession only, and not absolutely to pass the property, is larceny.

INDICTMENT against Benjamin Watson, for larceny of twenty-five dollars in gold, the property of one Hilton.

There was evidence tending to show that Hilton kept a saloon, consisting of two rooms, one on the first floor and one on the second floor; that the latter was called the ladies' room, the entrance to which, from the lower room, was through a door near the front or street door of the lower room; that in the forenoon of August 18, 1860, the respondent and his brother John agreed with Hilton to go to his saloon the following evening, and then and there to let Hilton have twenty-five dollars, in silver, which the respondent said he had, for which Hilton was to give him twenty-five dollars in gold or bills; that according to that agreement the respondent and John went to the saloon in the evening; that John went in and the respondent remained outside, near the door; that John told Hilton that the respondent had the silver, but did not like to come in, because there were so many there; that John went toward

the door, and the respondent said, "Let us go up into the ladies' room;" that John said to Hilton, "You pass me the money, and we will go up into the ladies' room;" that Hilton gave twenty-five dollars in gold to John, who immediately went out, and went away with the respondent; that neither the respondent nor his brother had twenty-five dollars in silver, but that the whole transaction was a contrivance, by the respondent and John, to defraud Hilton, and to get twenty-five dollars from him, without any consideration, and to keep the money. Hilton testified, on cross-examination, that when he gave the gold to John, he did not expect to receive it back again, but expected to receive the silver up stairs.

The respondent moved to be discharged, and that a verdict of not guilty be ordered, which motion the court overruled, and the respondent excepted.

The court instructed the jury, that if John obtained possession of the gold with intent to steal it, and if Hilton did not intend to part with his property in the gold before he should have received the silver for it, John was guilty of larceny; and that if the respondent was present aiding and abetting, he was guilty of larceny; to which instructions the respondent excepted.

The jury returned a verdict of guilty, which the respondent moved to set aside as against the evidence. The court overruled the motion, and the respondent excepted.

*Hatch*, for the respondent.

The conviction for larceny was wrong, because Hilton willingly parted with the possession of his money, and without any expectation of receiving again the same money. 3 Gr. Ev. sec. 160; Ros. Cr. Ev. 420, 561; Davis Cr. Jus. 541; 2 Russ. on Cr. 21, 298; 2 East Pl. Cr. 699; Whart. Cr. L. 759, secs. 1850, 1853; *Harvey's Case*, 2 Leach 523, cited 2 East 669; *Park's Case*, 2 Leach 703, cited 2 East P. C. 671; *Coleman's Case*, 1 Leach 339, cited

2 East 672, are cases in point. In Park's case, it was left to the jury to say whether there was from the beginning a premeditated plan, on the part of the prisoner, to obtain the goods without paying value for them, and whether there was a sale of the goods by the prosecutor with intent to part with his property. Yet the conviction was held wrong, because the property and the possession of the goods had been voluntarily parted with to the prisoner. 2 Russ. on Cr. 25. See also *Lewer* v. *Commonwealth*, 15 S. & R. 93, cited 2 Russ. 22, n; *Mowrey* v. *Walsh*, 8 Cow. 238; *Adams' Case*, cited 2 Russ. on Cr. 27–28; *Regina*. v. *Goodenough*, 25 L. & E. 572; *Welsh* v. *People*, 17 Ill. 339, 17 U. S. Dig. 376, Larceny, sec. 5.

The presumption is that Hilton intended to part absolutely with his property, when he parted with the possession. At any rate, the contrary was to be proved by the prosecution. There was no evidence from which the jury might find Hilton contemplated any event in which he might reclaim the gold coins, after he had delivered them. He was examined on this subject, and declared that when he delivered the gold to John Watson he had no expectation that it would be returned to him in any event.

There does not appear to have been any intention to commit the crime of larceny on the part of either John Watson or this defendant. 2 Russ. on Cr. 28; *Blunt* v. *Commonwealth*, 4 Leigh 689, cited Whart. Cr. L. sec. 1850. If any crime has been committed or intended, it is the crime of obtaining money by false pretences—Comp. Stat. 229, sec. 24; and it is for complicity in this only that the defendant should have been tried. *Ross* v. *People*, 5 Hill 294; *Regina* v. *Goodenough*, 35 E. L. & E. 572.

*Charles H. Bell*, Solicitor, for the State.

State *v.* Watson.

Doe, J. The facts and the instructions given to the jury, in this case, are substantially the same as in *Rex* v. *Aickles*, East Pl. Cr. ch. 15, sec. 106. Aickles had agreed to discount a bill for one Edwards. Edwards delivered the bill to Aickles, and referred him to one Wells, who had accepted the bill, and who was present, to satisfy himself that the acceptance was genuine. Wells declared it to be his acceptance, and Aickles said to Edwards, if he would go with him to Pulteney Street, he would give him the cash. Edwards replied that it was not convenient for him to go, but that one Croxall, his clerk, would go with him, and conclude the business. Croxall went with Aickles to his lodgings, in Pulteney Street, where Aickles showed him a room, and desired him to wait while he fetched the money, saying it was only about three streets off, and he should be back again in a quarter of an hour. Aickles went away with the bill and did not return. The court left the case with the jury, to consider, first, whether they thought the prisoner had a preconcerted design to get the note into his possession, with an intent to steal it; and next, whether Edwards intended to part with the note to the prisoner, without having the money paid first. The jury found the affirmative of the first, and the negative of the second question, and concluded that the prisoner was guilty; and upon reference to all the judges, they held the conviction proper. Edwards did not give Aickles credit for the property of the bill, and that being the case, he could no more be said to have parted with the property therein, nor, as it seems, with the legal possession, than the tradesman could be said to do, who, being desired by a person coming into his shop, to let him see some cravats, put the goods into his hands, and being asked the price, which he mentioned, the thief offered less, and ran away with the goods, without paying for them. *Abraham Chisser's Case*, T. Raym. 275. "This," says *Raymond*, ¶ was felony; first, because he should be said to have taken

State *v.* Watson.

these goods with a felonious intent, for the act subsequent, namely, his running away with them, explained his intent precedent; secondly, because, although the goods were delivered, yet they were not out of the owner's possession, by the delivery, till the property was altered by the perfection of the contract, which was but inchoate, and never perfected between the parties; and when the prisoner ran away with the goods, it was as if he had taken them up, lying in the shop, and had run away with them. If credit be given for property, for ever so short a time, larceny cannot be committed by converting it. Where the delivery is by way of pledge or security, the property in the thing pledged remains in the owner, and, therefore, larceny may be committed of it, if such delivery were obtained fraudulently and with intent to steal."‖

The inquiry as to the owner's intention is, whether, in making the delivery, he intended to part with the property, or only with the possession of the thing delivered. ‖ If he parted with the property to the prisoner, by whatever fraudulent means he was induced to give the credit, it cannot be larceny. Where persons, led by fallacious appearances held out to them by a prisoner, or those with whom he was acting in concert, have given him credit for goods, which, without such fraud, he would never have obtained, and of which he previously intended to cheat the owners, and the property was intended to be transferred to the identical person to or for whom the delivery is made, this does in no case amount to larceny, because, however fraudulent the intent may be, there is no trespass in the taking, without which there can be no larceny or robbery. Where such credit is obtained by false pretenses, the legislature have supplied a particular remedy.‖ Where, by the delivery, a special property, and, consequently, a legal possession, apart from any felonious intent of the receiver, would be transferred, if it be found that such delivery were fraudulently procured, with a felonious

intent to convert the property so acquired, the taking amounts to larceny. It is peculiarly the province of the jury to determine with what intent any act is done; and though, in general, he who has a possession of any thing, on delivery by the owner, cannot commit larceny thereof, yet this must be understood, first, where the possession is absolutely changed by the delivery, ar d next, where such possession is not obtained by fraud and with a felonious intent. For if, under all the circumstances of the case, it be found that a party has taken goods from the owner, though by his delivery, without any intention on his part to pass the property, and with an intent, on the part of the receiver to steal, such taking amounts to larceny. East Pl. Cr., ch. 16, secs. 102, 103, 105, 106, 108, 112. *Rex* v. *Oliver*, 4 Taunt. 274; R. & R. 215; *Rex* v. *Williams*, 6 C. & P. 390; *Regina* v. *Small*, 8 C. & P. 46; *Rex* v. *Rodway*, 9 C. & P. 784; *Commonwealth* v. *Wilde*, 5 Gray 83. *Pear's Case* is the leading case on this subject. East Pl. Cr., ch. 16, sec. 112. In *Park's Case*, East Pl. Cr., ch. 16, sec. 103, the goods were delivered to the prisoner, who paid for them with worthless bills; but the fact that the bills were worthless, was not discovered by the vendor at the time. It was clear that the property, as well as the possession, had been parted with, upon receiving that which was accepted as payment, though the bills afterward turned out to be of no value. The vendor intended absolutely to change the ownership, and pass the title at the time of the delivery.

It is claimed that the verdict is against the evidence, upon the question of Hilton's intention. Hilton testified that, when he gave the gold to the respondent's brother, he did not expect to receive it back again, but expected to receive the silver up stairs. Hilton's expectation related wholly to what the respondent and his brother would do. He supposed that the respondent had the silver, that he and his brother would go up stairs and give him the

silver, and keep the gold, according to agreement. His opinion or belief, as to what they would do, is not conclusive evidence of his own intention. If he had been asked what his intention was—whether he intended to part with his property in the gold until he should receive the silver—whether he intended, on delivery of the gold, immediately, unconditionally, and irrevocably to assign, relinquish and abandon all his right, title, and interest in it—he might have given answers that would have acquitted the prisoner; but if it had been supposed that he would give such answers, he would probably have been asked such questions. Upon all the evidence, it was competent for the jury to find that Hilton's intention was not such as would entitle the respondent to an acquittal.

The instructions and ruling of the court were correct.

*Judgment on the verdict.*